# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| TERRY DUKE, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | CAUSE NO. 1:07-CV-00188 |
|  | ) |  |
| MICHAEL J. ASTRUE, | ) |  |
| Commissioner of Social Security, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

## OPINION AND ORDER

Plaintiff Terry Duke appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying his application under the Social Security Act (the "Act") for a period of disability and Disability Insurance Benefits ("DIB").[1] (Docket # 1.) Duke's sole argument on appeal challenges Administrative Law Judge ("ALJ") Frederick McGrath's step five finding; specifically, Duke contends that the ALJ failed to properly evaluate the reliability of the vocational expert's testimony concerning the number of jobs that Duke could perform.

For the following reasons, the Commissioner's decision will be REVERSED, and the case will be REMANDED to the Commissioner for further proceedings in accordance with this Opinion.

---

[1] All parties have consented to the Magistrate Judge. *See* 28 U.S.C. § 636(c).

# I. FACTUAL AND PROCEDURAL HISTORY[2]

## A. *Duke's Background*

At the time the Commissioner issued its final decision, Duke was forty-three years old and had a high school education, as well as two years of college. (Tr. 67, 343.) He possessed work experience as an industrial maintenance repair person, which was heavy, semi-skilled work. (Tr. 3P, 3S, 364.)

## B. *Duke's Application for DIB*

Duke applied for DIB on October 21, 2002, alleging that he became disabled as of May 28, 2002, due to degenerative disk disease, three low back surgeries, hypertension, and hearing loss. (Tr. 60, 243-44; Opening Br. of Pl. in Social Security Appeal Pursuant to L.R. 7.3 ("Opening Br.") 3.) The Commissioner denied Duke's application initially and upon reconsideration, and Duke requested an administrative hearing. (Tr. 21, 32-39, 306-07.) On September 2, 2004, the ALJ conducted a hearing at which Duke, who was represented by counsel, and Edwin Yates, a vocational expert ("VE"), testified. (Tr. 24-26, 50-54, 274-304.)

## C. *Summary of the VE's Testimony at the First Hearing*

At the hearing, in response to various hypotheticals posed by the ALJ, the VE testified to a specific number of jobs that a hypothetical individual with Duke's age, education, experience, and RFC could perform. (Tr. 296-301.) Upon cross-examination, Duke's attorney asked the VE how he reached the number of jobs in the local economy that he supplied in response to the

---

[2] The administrative record in this case is voluminous (457 pages), and the parties' disputes involve only small portions of it, that is whether the ALJ's step five finding is supported by substantial evidence. Therefore, in the interest of brevity, this opinion recounts only the portions of the record necessary to the decision.

ALJ's hypotheticals:

> Atty: Okay. Now, you indicated that there were 283 electric tool repair jobs. How did you reach that number?
>
> VE: These are numbers based on economic studies of the local labor market.
>
> Atty: Are . . . those your studies or somebody else's[?]
>
> VE: Those are published by individuals in the fields of vocational rehabilitation, both mine as well as local rehabilitation counselors.
>
> Atty: Okay. And you say they're probably studies where - -
>
> VE: U.S. Department of Labor and Employment Statistics. The local Chamber of Commerce's, different universities, Departments of Rehabilitation and Economics.
>
> Atty: Okay. Well, okay, do any of these sources list . . . this job by DOT title?
>
> VE: Some do, some do not. It would depend specifically on what position you were looking for and specifics on each individual position that you needed.
>
> Atty: Okay. So you say that there are published sources that do include the DOT title electric tool repairer and indicate that there are 283 jobs?
>
> VE: Yes.
>
> Atty: Okay. Would you be able to provide that to the Judge?
>
> VE: Specifically no as those . . . statements are published by Department of Transportation, Department of Labor, the economic . . .
>
> Atty: Okay. Well, I mean could you produce a copy of any of those documents that would list that?
>
> Ve: No.
>
> Atty: Okay. Would that be the same for all these other jobs you've cited?
>
> VE: Yes.

3

(Tr. 301-03.) Duke's attorney then asserted an objection to the foundation of the VE's conclusions because the VE could not produce any of his sources. (Tr. 303.) Duke's attorney also sent a letter to the ALJ after the hearing reiterating his objections. (Tr. 22-23.)

### D. *Duke's First Judicial Action*

On January 27, 2005, the ALJ rendered an unfavorable decision to Duke, concluding that he was not disabled despite the limitations caused by his impairments because he could perform a significant number of jobs in the economy. (Tr. 8-20.) The Appeals Council denied Duke's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 4-6.) Duke filed a complaint with this Court on November 2, 2005, seeking relief from the Commissioner's final decision. *Duke v. Comm'r of Soc. Sec.*, No. 1:05-cv-383 (N.D. Ind. June 14, 2006). On June 13, 2006, the parties filed an Agreed Motion to Reverse and Remand and to Enter Judgment, which the Court granted, stating that upon remand the Commissioner "will obtain supplemental vocational expert testimony regarding the number of jobs, if any, that an individual with Plaintiff's functional limitations and vocational characteristics can perform, and provide supporting data and reasoning upon demand." *Id.*; (Tr. 323-27).

### E. *Remand to the Commissioner*

On remand, the Appeals Council vacated the ALJ's decision and remanded this case to the ALJ for supplemental vocational expert testimony, instructing the ALJ that the VE "should make arrangements to provide documentation for the data and reasoning used to support his testimony if the claimant challenges the foundation of the [VE's] testimony." (Tr. 321-22.) On December 19, 2006, the ALJ held a second hearing, at which Duke, who was represented by

4

counsel, and a different VE, Mr. Thompson, testified.[3] (Tr. 3FF-3JJ, 315-18, 439A-57.)

*F. Summary of the VE's Testimony at the Second Hearing*

At the second hearing, the VE testified to a specific number of jobs that a hypothetical individual with Duke's age, education, experience, and RFC could perform in response to certain hypotheticals the ALJ posed. (Tr. 445-46, 450-52.) Duke's attorney again asked the VE how he reached the number of jobs in the local economy that he supplied in response to the ALJ's hypotheticals:

> Atty: [Y]ou said that . . . the DOT does not classify in regard to alternate sit/stand. So . . . where did you get these numbers for the jobs that you gave?
>
> VE: Essentially the numbers come from a review of Bureau of Labor statistics. They were market surveys I've completed[,] a review of contacts with employers that I've had regarding conducting job placement services, and dealing with actual employers and coordinating return to work, essentially [I've] taken a look at those numbers and compiled a . . . review of what positions might be considered applicable and what numbers would be associated.
>
> . . . .
>
> Atty: Okay, now do any of the sources you listed actually list the number of the job? In other words, do[] the . . . statistics, did they indicate that there are 150 bench workers?
>
> VE: Generally, the Bureau of Labor statistics deals with larger occupational categories . . . . [T]hat by itself is not going to allow for a specific number related to a specific DOT number so that's why I needed to take a look at the other aspects of my professional experience and looking at applicable numbers.
>
> Atty: Okay, so I guess my question is, how do you get to the, for example, . . . the 150 jobs of bench worker. How do you arrive at that?
>
> VE: Essentially it's through first starting with the Bureau of Labor statistics and looking at the occupational categories and then reviewing over a period of time

---

[3] In April 2005, Duke filed a second application for DIB, which the Commissioner denied initially and upon reconsideration. (Tr. 304A-05, 329-37, 346-56.) Duke then requested a hearing on the April 2005 claim, and the ALJ ultimately consolidated it with the claim now pending before this Court. (Tr. 3F, 328.)

5

> what labor market surveys I've completed and contacts that I've had with
> employers and then compile . . . what applicable positions might be . . . sedentary
> or allow for an alternating sitting and standing and then I come up with a number,
> reducing in some, generally in some cases, from those larger occupational
> categories.
>
> . . . .
>
> Atty: Okay. Now do you have those labor market surveys or information and contact
> with employers?
>
> VE: I don't have any published information or it's basically work product that I've
> completed for various cases I've done over the years.
>
> Atty: Okay, did you have that with you?
>
> VE: No, I don't.
>
> Atty: Okay, can you submit that to the Judge?
>
> VE: Like I say, it's been a series of labor market surveys and information that I've
> compiled over the years, I don't have anything specific that I could refer to that
> would relate to those specific numbers.
>
> Atty: Okay so you wouldn't have any market surveys or anything that would - -
>
> VE: No.
>
> Atty: So you're relying essentially on your experience?
>
> VE: Correct. Well, which is based certainly upon contacts and the statistical
> information and all that but essentially there's nothing that I can provide as far as
> a work product that will say here is exactly what these are related to.

(Tr. 447-49.)

After Duke's attorney completed his questioning, the ALJ further examined the VE about the number of jobs that would be available to a hypothetical individual with Duke's RFC, also inquiring into the VE's sources:

> ALJ: [Y]ou used the same resource tools . . . that you testified to in response to the
> questions asked by Mr. Shull?

> VE: Same tools and the same rationale.
>
> ALJ: Are these tools the same type of tools that Social Security Administration recognizes as acceptable tools to be used by vocational experts in these types of cases?
>
> VE: Yes.

(Tr. 452-53.)

> Duke's attorney then re-examined the VE about these "approved tools":
>
> Atty: Judge, . . . if we're talking about some source that the agency approves, . . . that should [be] made of record . . . because I'm still not sure what it is . . . ."
>
> ALJ: Well I'll tell you what we can do at the end of the hearing. Anything that you want to request in terms of documentation as to how the agency hires and determines the qualifications of the [VE], what type of training, whatever, []submit that request to me and I'll send it to the appropriate component of the agency and they can respond and I'll make that part of the record.
>
> Atty: Now, [d]id you reach the 2,500 [jobs] the same way you reached the other jobs that we talked about, bench worker, etcetera?
>
> VE: Yes.
>
> Atty: And if I were to ask you for the underlying materials on that, you would not be able to provide me with that either?
>
> VE: It would be the same process that I came up with the numbers and there would be no - -
>
> Atty: Basically it would be based on your experience?
>
> VE: In addition to the looking at the general categories and labor market surveys but there would be no published data that I could provide to you.
>
> Atty: Or data that you have yourself?
>
> VE: Correct.

Duke's attorney then asserted an objection to the foundation of the VE's conclusions before the close of the hearing. (Tr. 456-57.) In addition, Duke's attorney sent another letter to the ALJ

7

after the hearing reiterating his objections and requesting that he be provided with the VE's sources. (Tr. 308-09.) The record does not indicate that Duke's attorney was ever provided with any of the information he requested.

## G. Duke's Second Judicial Action

On February 27, 2007, the ALJ issued a second unfavorable decision to Duke concluding, based on the VE's testimony, that Duke was not disabled because he could perform a significant number of jobs in the economy. (Tr. 3C-3S.) In the decision, the ALJ specifically explained why he found the VE's testimony to be reliable. (Tr. 3Q-3S.) The Appeals Council denied Duke's request for review, making the ALJ's second decision the final decision of the Commissioner. (Tr. 3V-3CC.) Duke then filed a second complaint with this Court on July 27, 2007, again seeking relief from the Commissioner's final decision. (Docket # 1.)

## II. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

To determine if substantial evidence exists, the Court reviews the entire administrative

8

record but does not re-weigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id.* Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003). Nonetheless, "substantial evidence" review should not be a simple rubber-stamp of the Commissioner's decision. *Clifford*, 227 F.3d at 869.

### III. ANALYSIS

#### A. The Law

Under the Act, a claimant is entitled to DIB if he establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. § 404, Subpt. P, App. 1; (4) whether the claimant is unable to perform his past work; and (5) whether the claimant is incapable of performing work in the national economy.[4] *See* 20 C.F.R. §

---

[4] Before performing steps four and five, the ALJ must determine the claimant's residual functional capacity ("RFC") or what tasks the claimant can do despite his limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. § 404.1520(e).

404.1520; *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868.

### B. *The ALJ's Finding at Step Five Is Not Supported by Substantial Evidence*

Duke's sole argument on appeal is that the ALJ's determination at step five is not supported by substantial evidence because the VE's testimony upon which the ALJ relied purportedly lacked an adequate foundation. For the reasons stated herein, Duke's argument has merit.

As stated *supra*, a plaintiff seeking DIB bears the burden of proof at steps one through four of the ALJ's sequential five-part inquiry; the burden then shifts to the Commissioner at step five. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). At this final step, the Commissioner must establish that the plaintiff's RFC allows him to engage in work found in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(f), 404.1566. One way the Commissioner may carry this burden is through the use of vocational expert testimony, provided that such testimony is reliable. *See, e.g., Ehrhart v. Sec'y of Health & Human Servs.*, 969 F.2d 534, 540 (7th Cir. 1992).

The Seventh Circuit Court of Appeals has "recognized that the standards by which an expert's reliability is measured may be less stringent at an administrative hearing than under the Federal Rules of Evidence." *McKinnie v. Barnhart*, 368 F.3d 907, 910 (7th Cir. 2004) (citing

*Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002)). Yet, "because an ALJ's findings must be supported by substantial evidence, an ALJ may depend upon expert testimony only if the testimony is reliable." *Id.*; *Donahue*, 279 F.3d at 446 ("Evidence is not 'substantial' if vital testimony has been conjured out of whole cloth."); *see also Britton v. Astrue*, 521 F.3d 799, 803-04 (7th Cir. 2008).

"If the basis of the vocational expert's conclusions *is* questioned at the hearing . . . then the ALJ should make an inquiry (similar though not necessarily identical to that of Rule 702) to find out whether the purported expert's conclusions are reliable." *Donahue*, 279 F.3d at 446. "A vocational expert is 'free to give a bottom line,' but the data and reasoning underlying that bottom line must be 'available on demand' if the claimant challenges the foundation of the vocational expert's opinions." *McKinnie*, 368 F.3d at 911 (quoting *Donahue*, 279 F.3d at 446). "[T[he data underlying a VE's testimony must be available on demand to facilitate cross-examination and testing of the VE's reliability." *Britton*, 521 F.3d at 803.

Here, a review of the VE's testimony at the second hearing makes it quite clear that the data underlying the VE's bottom line was *not* "available on demand" to Duke. At the hearing, Duke's attorney specifically requested, in fact more than once, the VE's underlying data:

> Atty: Okay. Now do you have those labor market surveys or information and contact with employers?
>
> VE: I don't have any published information or it's basically work product that I've completed for various cases I've done over the years.
>
> Atty: Okay, did you have that with you?
>
> VE: No, I don't.
>
> Atty: Okay, can you submit that to the Judge?

11

> VE: Like I say, it's been a series of labor market surveys and information that I've compiled over the years, I don't have anything specific that I could refer to that would relate to those specific numbers.
>
> Atty: Okay so you wouldn't have any market surveys or anything that would - -
>
> VE: No.

(Tr. 448-49; *see also* Tr. 3R, 456.)

What is particularly incredulous in this instance is that this Court, in its June 14, 2006, Opinion and Order remanding the case to the Commissioner, ordered the Commissioner to "obtain supplemental vocational expert testimony regarding the number of jobs, if any, that an individual with Plaintiff's functional limitations and vocational characteristics can perform, *and provide supporting data and reasoning upon demand*." (Tr. 324.) In furtherance of the Court's Order, the Appeals Council's remand order specifically instructed the ALJ that the VE "should make arrangements *to provide documentation* for the data and reasoning used to support [the VE's] testimony if the claimant challenges the foundation of the [VE's] opinions" (Tr. 322 (emphasis added).) Yet, the ALJ failed to follow this instruction by the Appeals Council, not only at the hearing but also after the hearing when faced with a letter from Duke's attorney requesting, yet again, the VE's underlying data and sources. *See Wilder v. Apfel*, 153 F.3d 799, 803 (7th Cir. 1998) (remanding case for an award of DIB where the ALJ, among other things, ignored the instructions the district court articulated when remanding the case).

Indeed, the instant circumstances appear similar to those in *McKinnie v. Barnhart*, 368 F.3d 907, 910 (7th Cir. 2004), where the Seventh Circuit Court of Appeals concluded that a VE's data was not "available on demand" when the VE testified that her figures were based on her own surveys and government statistics but she had not prepared any written documentation, did

not bring any resource materials to the hearing, and could not provide citations to the information on which she relied. *See Britton*, 521 F.3d at 803 (citing *McKinnie*, 368 F.3d at 910-11). As the Seventh Circuit reiterated recently in *Britton v. Astrue*, 521 F.3d 799, 803-04 (7th Cir. 2008), "the data underlying a VE's testimony must be available on demand to facilitate cross-examination and testing of the VE's reliability." Here, Duke's attorney had absolutely no data from which to cross-examine the VE, as the VE "provided no data or citations for the references he relied upon in forming [his] opinion." *McKinnie*, 368 F.3d at 909; *see also Denham v. Barnhart*, No. 05 C 3128, 2006 WL 4097284, at *2-3 (N.D. Ill. May 23, 2006) (remanding the ALJ's step five determination where the plaintiff challenged the VE's bottom-line testimony about the number of jobs available to plaintiff and the VE failed to provide to plaintiff the data supporting his testimony).

Admittedly, in contrast to *McKinnie*, the ALJ did make further inquiry of the VE once Duke's attorney questioned the sources upon which the VE relied. Yet, at that point the ALJ seemingly probed more into the VE's past experience rather than his data, sources, and methodology. (*See* Tr. 454-55.) Seventh Circuit case law has instructed that if the basis of a VE's conclusion is challenged at the hearing, "then the ALJ should make an inquiry (*similar though not necessarily identical to that of Rule 702*) to find out whether the purported expert's conclusions are reliable." *Donahue*, 279 F.3d at 446 (emphasis added); *see also McKinnie*, 368 F.3d at 911. Rule 702 states that a witness qualified as an expert by his knowledge, skill, experience, training or education, may testify "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Civ. P. 702.

13

Here, rather than producing facts, data, and reliable methodology, the VE admitted during his testimony that he essentially relied on his own experience in reaching his bottom-line conclusions (Tr. 447-49), which seemingly falls short of the standards articulated by the Seventh Circuit Court of Appeals in *McKinnie*, 368 F.3d at 910-11, and *Britton*, 521 F.3d at 803-04.

In sum, "[a] finding based on unreliable VE testimony is equivalent to a finding that is not supported by substantial evidence and must be vacated." *Britton*, 521 F.3d at 803. Therefore, this case will be remanded to the ALJ to conduct a new step five analysis in which Duke is provided with the data and sources underlying the VE's testimony.

### C. The Court Will Not Award Duke Benefits

Duke asserts that this case should be reversed and remanded for payment "based on obdurate behavior plus other circumstances," emphasizing that this case has now been pending for almost five and a half years. (Opening Br. 7.) While Duke's plea for a remand for payment is understandable based on the time that has passed since filing his application, we cannot award benefits in this instance.

To explain, in *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 356 (7th Cir. 2005), the Seventh Circuit Court of Appeals dismissed the idea that "obduracy alone could ever warrant an award of benefits." Rather, "an award of benefits is appropriate only if all factual issues have been resolved and the record supports a finding of disability." *Id*. ("Obduracy is not a ground on which to award benefits; the evidence properly in the record must demonstrate disability."). Here, Duke has failed to establish that all of the factual issues have been resolved and that the record supports a finding of disability.

Therefore, Duke's appeal for an outright award of benefits based on obduracy is contrary

to Seventh Circuit case law and, consequently, the case will be remanded to the Commissioner for further step-five proceedings.

## IV.  CONCLUSION

For the reasons articulated herein, the decision of the Commissioner is REVERSED, and this case is REMANDED to the Commissioner for further proceedings in accordance with this Opinion.  The Clerk is directed to enter a judgment in favor of Duke and against the Commissioner.

SO ORDERED.

Enter for this 27th day of August, 2008.

<u>S/Roger B. Cosbey</u>
Roger B. Cosbey,
United States Magistrate Judge